IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION
2017 FEB 23  PM 3: 38
SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

RYAN YOUNG,                                )
                                           )
                    Plaintiff,             )      CASE NO.
                                           )
        v.                                 )      **1   17-cv-0580WTL-TAB**
                                           )
PEPSICO D/B/A GATORADE,                    )      COMPLAINT
                                           )
                    Defendant.             )      DEMAND FOR JURY TRIAL
                                           )

**COMPLAINT**

NATURE OF THE ACTION

This is an action under the Americans with Disabilities Act (1991) (42 U.S.C. § 12101, et seq.) and jurisdiction is based on 28 U.S.C. § 1331 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Ryan Young ("Young" or the "Employee") who was adversely affected by such practices. The Plaintiff, an employee of PepsiCo d/b/a Gatorade (hereinafter "Gatorade" or the "Employer" or "Company"), was subjected to discrimination when denied equal employment opportunities at Gatorade because of his disability.

JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343. This action is authorized and instituted pursuant to the Americans with Disabilities Act (1991) and jurisdiction is based on 28 U.S.C. § 1331.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Indiana, Indianapolis Division.

PARTIES

3.     Plaintiff Ryan Young, an employee of Defendant Gatorade, and an individual with a disability, is expressly authorized to bring this action by the Americans with Disabilities Act (1991) and jurisdiction is based on 28 U.S.C. § 1331.

4.     At all relevant times, Defendant Gatorade has continuously been a domestic for-profit corporation doing business in the State of Indiana and the City of Indianapolis, Indiana and has continuously had at least fifteen (15) employees.

5.     At all relevant times, Defendant Gatorade has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

STATEMENT OF CLAIMS

6.     More than thirty (30) days prior to the institution of this lawsuit, Young filed a charge with the Equal Employment Opportunity Commission (hereinafter "EEOC") against Gatorade (EEOC Charge No. 846-2010-03024) alleging violations of the Americans with Disabilities Act (1991) (42 U.S.C. §12101, et seq.) by Defendant Employer Gatorade.  The EEOC issued a Dismissal and Notice of Rights dated November 26, 2016, and the Plaintiff received said notice on or about November 28, 2016. *See* Exhibit 1. All conditions precedent to the institution of this lawsuit have been fulfilled.

7.     Since at least October 23, 2015, Defendant engaged in unlawful employment practices at its Indianapolis, Indiana location in violation of the Americans with Disabilities Act (1991) (42 U.S.C. §12101, et seq.).  Defendant subjected Young to discrimination on the basis of his disability when Gatorade failed to provide reasonable accommodations and subjected Plaintiff to adverse employment actions.

2

8. The effect of the practices complained of has been to deprive Young of equal employment opportunities and otherwise adversely affect his status as an employee, because of his disability.

9. The unlawful employment practices complained of were intentional and reckless.

10. The unlawful employment practices complained of were done with malice and reckless indifference to the federally protected rights of Young.

## FACTS

11. Plaintiff Ryan Young began working for Gatorade on or about March 30, 2015, in the capacity of Production Operator.

12. Young informed the Employer during his interview that he was a disabled veteran and had Type I Diabetes and narcolepsy.

13. On or about July 15, 2015, the company requested a medical statement indicating that Young could not work consecutive days of back-to-back 12-hour shifts.

14. On or about August 13, 2015, Young provided a letter from his doctor stating he was under doctor's care and can perform the current work duties and work heavy machinery, but due to several health conditions cannot work overtime two consecutive days in a row, as it will cause health complications.

15. On October 20, 2015, Young was at work for a shift change (3rd shift to 1st shift) and training on a machine and was in the break room and was taken to the hospital after he became ill. The company did not adhere to the restricted schedule that Young's doctor recommended. The company continued to violate the requested restriction and scheduled Young for work periods that exceeded his medical restriction.

16.     From at least October 23, 2015, Young received discipline in the form of attendance points because he missed time from work due to his disabilities.

17.     Young provided the Employer with medical documentation regarding his absences and medical restrictions.

18.     Bill Keller, Production Supervisor, informed Young that there is a no-fault attendance policy and that the points would not be removed.  Keller told Young that Sarah Litz, Human Resources Manager informed him of this policy.

19.     Young asked for a reasonable accommodation after he was repeatedly scheduled for back-to-back 12-hour shifts.

20.     On or about December 27, 2015, Young asked the Employer about Family Medical Leave Act (FMLA) options to conserve his attendance points.

21.     Young was informed after calling the ADA helpline that the company was to provide him ADA paperwork and information, however the company failed to provide documents concerning the ADA or FMLA and led him to believe he needed to get it elsewhere.

22.     The Employer has provided Young's confidential medical information to non-management employees or has allowed non-management employees access to his medical information without a bona fide need.

23.     Specifically, on December 13, 2015, a scheduler (non-management employee) asked to see Young's medical letter and wanted to call the company's health and safety representative to confirm if he could work.

24.     A scheduler also sent an email out revealing Young's medical condition to others and said that she did not think Young could do the job due to him being diabetic.

25.     Two QA Techs asked Young about his Apple watch that contains his medical information.  The first incident involved a QA Tech asking Young "do you wear it because of your diabetes?" The second incident involved a QA Tech telling Young he could not wear his Apple watch.  The QA Tech said "you know you are not supposed to wear a watch on the floor. Is it because of your diabetes?" Young responded "you can't ask me about that."

26.     The company also put an expiration date on Young's work restriction, although his doctor did not indicate a time limit.

27.     On or about January 10, 2016, Young filed a Discrimination Charge No. 846-2016-03024 with the Equal Employment Opportunity Commission ("EEOC") against Gatorade alleging disability discrimination related to his employment. *See* Exhibit 2.

28.     Since filing his EEOC Charge, Young has been subjected to retaliation, harassment, and discrimination and the Employer has failed to provide reasonable accommodation to Young.

29.     Specifically, the company required Young to use FMLA leave or call off sick to limit the back-to-back work schedule, which would have caused him to fraudulently use FMLA when he was not sick. The company made Young use FMLA and sick leave, rather than set his schedule properly.

30.     Young was suspended from work due to an alleged threat made over social media toward an unnamed employee. Young was returned to work after an investigation, but has not received his lost wages due to the suspension. Young denies making a threat toward anyone.

31.     As recent as February 17, 2017, the company put Young on notice for attendance call offs due to excessive FMLA approval.  However the absences are due to Young having to call off for overtime that was improperly scheduled and conflict with his medical restriction of

not having consecutive back-to-back 12-hour shifts. The absences were also rescinded with the help of the employee union.

32.     As recent as February 18, 2017, the company allowed another employee to go home and instead called Young to work an extended shift on the schedule and did not accommodate him with scheduling within his medical restriction.

33.     On or about November 26, 2016, the EEOC issued a Dismissal and Notice of Rights for Charge No. 846-2016-03024, and the Plaintiff received said notice on or about November 28, 2016. *See* Exhibit 1.

34.     The conduct of the Defendant, which is complained of herein, is in violation of the Americans with Disabilities Act (1991) (42 U.S.C. §12112, et seq.), and the Plaintiff seeks the following relief from discrimination.

PRAYER FOR RELIEF

Wherefore, the Plaintiff respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in discrimination, retaliation and any other employment practices, which discriminates on the basis of disability.

B.     Order Defendant to institute and carry out policies practices, and programs, which provide equal employment opportunities for disabled employees and other, protected classes, and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make Plaintiff whole by paying compensatory damages for the unlawful practices complained of in the facts above, in amounts to be determined at trial.

D.     Order Defendant to make Plaintiff whole by paying punitive damages for the uniawful practices complained of in the facts above, in amounts to be determined at trial.

E.     Grant such further relief to the Plaintiff, as the Court deems necessary and proper in the premises.

F.     Award the Plaintiff his costs, including attorney fees, pursuant to 42 U.S.C. §12205 in this action.

### JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted

By: _____

Michelle Smith Scott, Atty. ID #18983-49A
120 E. Market St., Suite 305
Indianapolis, IN 46204
Telephone:  (317) 371-3667
Facsimile:   (317) 376-7043

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing *Complaint* has been served by first-class United States mail, postage prepaid, this 23rd day of February, 2017, upon:

PepsiCo d/b/a Gatorade
5858 Decatur Blvd.
Indianapolis, IN 46241

_____

Michelle Smith Scott, Esq.

Michelle Smith Scott
120 E. Market St., Suite 305
Indianapolis, IN 46204
Telephone:  (317) 371-3667
Facsimile:   (317) 376-7043